**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin S. Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA DETWEILER, individually and as successor-in-interest to Nicholas Detweiler, deceased,<br><br>            Plaintiff,<br><br>      v.<br><br>CITY OF MOUNT SHASTA; JEREMIAH CAPURRO; NATIONAL RAILROAD PASSENGER CORPORATION; BRUCE GARRETT; and DOES 1 through 10, inclusive,<br><br>            Defendants. | **COMPLAINT FOR DAMAGES:**<br><br>1. Fourth Amendment, Excessive Force (42 U.S.C. § 1983)<br>2. Fourth Amendment, Unlawful Detention and Arrest (42 U.S.C. § 1983)<br>3. Fourth Amendment, Denial of Medical Care (42 U.S.C. § 1983)<br>4. First and Fourteenth Amendments, Interference with Familial Relationship (42 U.S.C. § 1983)<br>5. Americans with Disabilities Act (42 U.S.C. § 12132)<br>6. Battery (Wrongful Death and Survival)<br>7. Negligence (Wrongful Death and Survival)<br>8. Violation of Bane Act (Cal. Civil Code §52.1)<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff JULIA DETWEILER, individually and as successor-in-interest to Nicholas Detweiler, deceased, for her Complaint against Defendants CITY OF MOUNT SHASTA, JEREMIAH CAPURRO, NATIONAL RAILROAD PASSENGER CORPORATION, BRUCE GARRETT, and DOES 1 through 10, inclusive, and each of them (collectively, "Defendants"), and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in this district and, on information and belief, all Defendants reside in this district.

## INTRODUCTION

3.      This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the fatal officer shooting of Plaintiff's son, Nicholas Detweiler, on December 25, 2023.

4.      Plaintiff alleges that the death of Nicholas Detweiler was a result of the excessive use of deadly force by Defendants JEREMIAH CAPURRO and DOES 1-10, of Defendants' failure to provide reasonable medical care to Nicholas Detweiler despite Nicholas Detweiler's serious medical condition after being shot, and of Defendants' deliberate indifference to Nicholas Detweiler's Constitutional rights.

## PARTIES

5.      At all relevant times, Nicholas Detweiler was an individual residing in

1 | the City of Klamath Falls, Oregon.

2 |      6.     Plaintiff JULIA DETWEILER is an individual residing in the city of Rio

3 | Nido, California and is the natural mother of Nicholas Detweiler. JULIA

4 | DETWEILER sues in her individual capacity as the mother of Nicholas Detweiler

5 | and in a representative capacity as successor-in-interest to Nicholas Detweiler

6 | pursuant to California Code of Civil Procedure §377.60. JULIA DETWEILER seeks

7 | both survival and wrongful death damages under federal and state law.

8 |      7.     At all relevant times, Defendant CITY OF MOUNT SHASTA ("CITY")

9 | is and was a municipal corporation existing under the laws of the State of California.

10 | CITY is a chartered subdivision of the State of California with the capacity to be

11 | sued. CITY is responsible for the actions, omissions, policies, procedures, practices,

12 | and customs of its various agents and agencies, including the Mount Shasta Police

13 | Department and its agents and employees. At all relevant times, CITY was

14 | responsible for assuring that the actions, omissions, policies, procedures, practices,

15 | and customs of the CITY and its employees and agents complied with the laws of the

16 | United States and of the State of California. At all relevant times, CITY was the

17 | employer of JEREMIAH CAPURRO and of some or all of DOES 1-10.

18 |      8.     Defendant JEREMIAH CAPURRO is a police officer for the CITY's

19 | Police Department. At all relevant times, JEREMIAH CAPURRO was acting under

20 | color of law and within the course and scope of his duties as an officer for the CITY,

21 | and was acting with the complete authority and ratification of his principal,

22 | Defendant CITY.

23 |      9.     Defendant NATIONAL RAILROAD PASSENGER CORPORATION

24 | ("AMTRAK") is a private company incorporated in the District of Columbia doing

25 | business in California and in the County of Siskiyou. At all relevant times,

26 | AMTRAK was responsible for assuring that the actions, omisisons, policies,

27 | procedures, practices, and customs of AMTRAK and its employees and agents

28 | complied with the laws of the United States and the State of California. At all

relevant times, AMTRAK was the employer of Defendant BRUCE GARRETT.

10.     Defendant BRUCE GARRETT is an employee of AMTRAK. At all relevant times, BRUCE GARRETT was acting within the course and scope of his duties as an employee for AMTRAK, and was acting with the complete authority and ratification of his principal, AMTRAK.

11.     Defendants DOES 1-10 are police officers for the CITY's Police Department ("DOE OFFICERS"). At all relevant times, DOE OFFICERS were acting under color of law within the course and scope of their duties as officers for the CITY, and were acting with the complete authority and ratification of their principal, Defendant CITY.

12.     On information and belief, JEREMIAH CAPURRO was a resident of the County of Siskiyou at all relevant times.

13.     On information and belief, DOES 1-10 were residents of the County of Siskiyou at all relevant times.

14.     The true names and capacities, whether individual, corporate, association or otherwise of Defendant DOES 1-10, inclusive, are unknown to Plaintiff, who otherwise sue these Defendants by such fictitious names. Plaintiff will seek leave to amend this compliant to show the true names and capacities of these Defendants when they have been ascertained. On information and belief, each of the fictiously named Defendants is responsible in some manner for the conduct or liabilities alleged herin.

15.     Defendants DOES 1-10 are sued in their individual capacities.

16.     At all times mentioned herein, each and every Defendant, including DOES 1-10, was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

17.     All of the acts complained of herein by Plaintiff against Defendants, including DOES 1-10, were done and performed by said Defendants by and through

1  their authorized agents, servants, and/or employees, all of whom at all relevant times

2  herein were acting with the course, purpose, and scope of said agency, service, and/or

3  employment capacity.

4  **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

5      18.    Plaintiff repeats and realleges each and every allegation in the foregoing

6  paragraphs of this Complaint with the same force and effect as if fully set forth

7  herein.

8      19.    On or about December 25, 2023, Nicholas Detweiler was a ticketed

9  passenger on a passenger train operated by AMTRAK and on which BRUCE

10  GARRETT was working as, on information and belief, a train conductor.

11      20.    JEREMIAH CAPURRO boarded the train to respond to an alleged

12  disturbance, and BRUCE GARRETT led JEREMIAH CAPURRO to the area where

13  Nicholas Detweiler was seated in a passenger seat in a train car.

14      21.    After entering the train car, JEREMIAH CAPURRO contacted Nicholas

15  Detweiler, who was sleeping while seated.

16      22.    Thereafter, JEREMIAH CAPURRO escalated the situation when he

17  woke Nicholas Detweiler from his sleep and shined a flashlight in Nicholas

18  Detweiler's face while issuing conflicting orders in a hostile manner, including

19  directing Nicholas Detweiler to leave the train, and while grabbing onto Nicholas

20  Detweiler and preventing him from retrieving his belongings from the seat next to

21  him to leave the train as directed.

22      23.    JEREMIAH CAPURRO further escalated the situation when he then

23  discharged his taser at Nicholas Detweiler, without justification, striking Nicholas

24  Detweiler.

25      24.    BRUCE GARRETT then approached Nicholas Detweiler and grabbed

26  Nicholas Detweiler from behind, restraining Nicholas Detweiler, while JEREMIAH

27  CAPURRO discharged his taser at Nicholas Detweiler a second and third time.

28      25.    While Nicholas Detweiler was being restrained from behind by BRUCE

GARRETT, JEREMIAH CAPURRO then proceeded to repeatedly strike Nicholas Detweiler with his police baton. JEREMIAH CAPURRO had not observed Nicholas Detweiler commit any crime, strike or attempt to strike anyone, flee or attempt to flee, or verbally threaten to harm anyone.

26.    BRUCE GARRETT continued to restrain Nicholas Detweiler and prevent Nicholas Detweiler from exiting the train, despite JEREMIAH CAPURRO having clearly and audibly told Nicholas Detweiler to exit the train such that, on information and belief, BRUCE GARRETT could hear it.

27.    Shortly thereafter, while Nicholas Detweiler continued to be restrained from behind by BRUCE GARRETT, JEREMIAH CAPURRO repeatedly discharged his firearm at Nicholas Detweiler, striking him.

28.    At the time JEREMIAH CAPURRO repeatedly tasered and beat Nicholas Detweiler with baton strikes, Nicholas Detweiler posed no immediate threat of harm to JEREMIAH CAPURRO or any other person.

29.    At the time JEREMIAH CAPURRO repeatedly shot Nicholas Detweiler with his firearm, Nicholas Detweiler posed no immediate threat of death or serious bodily injury to JEREMIAH CAPURRO or any other person.

30.    JEREMIAH CAPURRO did not issue appropriate commands to Nicholas Detweiler during the encounter, including in the moments prior to JEREMIAH CAPURRO's use of deadly force. JEREMIAH CAPURRO also did not warn Nicholas Detweiler that JEREMIAH CAPURRO would use force against him, including deadly force, before tasering Nicholas Detweiler, beating him with baton strikes, or fatally shooting him.

31.    At the time of the shooting, Nicholas Detweiler made no aggressive movements toward JEREMIAH CAPURRO, did not lunge toward JEREMIAH CAPURRO, did not step or move toward JEREMIAH CAPURRO, and did not make any furtive gestures that would suggest to JEREMIAH CAPURRO that he was attempting, or intending to inflict harm to JEREMIAH CAPURRO.

32.     JEREMIAH CAPURRO did not employ tactics to de-escalate the situation, failed to give Nicholas Detweiler time and space to understand and accept JEREMIAH CAPURRO's presence, failed to approach and speak to Nicholas Detweiler in a non-threatening manner, and failed to give Nicholas Detweiler the opportunity to consent to and cooperate with instructions.

33.     Nicholas Detweiler was not an immediate threat of death or serious bodily harm to anyone at the time JEREMIAH CAPURRO shot and killed Nicholas Detweiler. Plaintiff is informed and believe that at no time prior to JEREMIAH CAPURRO discharging his weapon, that no police officer, or other person, was facing an imminent threat of death or serious physical injury, and that no police officer was incapable of neutralizing and/or effectuating the seizure of Nicholas Detweiler using any of a variety of readily available less intrusive means or strategies. The force used by the JEREMIAH CAPURRO was unnecessary, excessive, and unreasonable under the totality of the circumstances.

34.     On information and belief, Nicholas Detweiler never verbally threatened anyone prior to being fatally shot by JEREMIAH CAPURRO.

35.     JEREMIAH CAPURRO shot Nicholas Detweiler even though he was not an immediate threat of death or serious bodily injury to him or anyone else and there were other less intrusive options available. JEREMIAH CAPURRO did not show a reverance for human life, and this was not an immediate defense of life situation.

36.     Nicholas Detweiler never pointed a firearm at Defendant JEREMIAH CAPURRO, or anyone else, prior to being fatally shot. Nicholas Detweiler was not armed with a firearm or any other deadly weapon.

37.     Based on information and belief, after JEREMIAH CAPURRO discharged his firearm and became aware of Nicholas Detweiler's deteriorating physical condition, JEREMIAH CAPURRO and DOE OFFICERS waited several minutes before summoning paramedics to render medical care, and further

1  unreasonably delayed paramedics' access to Nicholas Detweiler upon arrival at the

2  incident scene.

3      38.    Nicholas Detweiler died as a result of his injuries.

4      39.    Plaintiff JULIA DETWEILER is Nicholas Detweiler's successor-in-

5  interest as defined in Section 377.11 of the Califoria Code of Civil Procedure and

6  succeeds to Nicholas Detweiler's interest in this action as the natural mother of

7  Nicholas Detweiler.

8      40.    On or around June 4, 2024, Plaintiff filed comprehensive and timely

9  claims for damages with the City of Mount Shasta pursuant to the applicable sections

10 of the California Government Code. Said claims were denied by operation of law on

11 July 19, 2024. As of the date of this filing, Plaintiff has not received any response to

12 these claims.

13                    **FIRST CLAIM FOR RELIEF**

14     **Unreasonable Search and Seizure - Excessive Force (42 U.S.C. § 1983)**

15       (Plaintiff against Defendants JEREMIAH CAPURRO and DOES 1-10)

16     41.    Plaintiff repeats and realleges each and every allegation in the foregoing

17 paragraphs of this Complaint with the same force and effect as if fully set forth

18 herein.

19     42.     The unreasonable use of force, including deadly force, by Defendant

20 JEREMIAH CAPURRO deprived Nicholas Detweiler of his right to be secure in his

21 person against unreasonable searches and seizures as guaranteed to Nicholas

22 Detweiler under the Fourth Amendment to the United States Constitution and applied

23 to state actors by the Fourteenth Amendment.

24     43.    As a result of JEREMIAH CAPURRO's unreasonable use of force,

25 Nicholas Detweiler suffered extreme pain and suffering and eventually lost his life.

26 Plaintiff has also been deprived of the life-long love, companionship, comfort,

27 support, society, care, and sustenance of Nicholas Detweiler, and will continue to be

28 so deprived for the remainder of her natural life.

44.     As a result of the conduct of Defendants JEREMIAH CAPURRO and DOE OFFICERS, they are liable for Nicholas Detweiler's injuries, either because they were integral participants in the use of excessive force, or because they failed to intervene to prevent these violations.

45.     The use of force, including deadly force, was excessive and unreasonable under the circumstances, especially since Nicholas Detweiler did not pose an immediate threat of death or serious bodily injury to JEREMIAH CAPURRO, or anyone else, prior to being fatally shot. Further, Nicholas Detweiler never verbally threatened anyone in the officers' presence and never brandished a deadly weapon at JEREMIAH CAPURRO, or anyone else, prior to being fatally shot. Defendants also failed to investigate or appropriately consider whether Nicholas Detweiler was mentally ill and/or experiencing a mental crisis, despite readily apparent indications that he was. Defendants also did not properly assess Nicholas Detweiler's mental state or employ appropriate tactics given Nicholas Detweiler's mental state. Defendants' actions thus deprived Nicholas Detweiler of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

46.     The conduct of JEREMIAH CAPURRO and DOE OFFICERS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Nicholas Detweiler and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

47.     As a result of the foregoing, Nicholas Detweiler suffered great physical pain and emotional distress up to the time of his death after the shooting, and also suffered a loss of enjoyment of life, loss of life, and loss of earning capacity.

48.     As a direct and proximate result of the wrongful death of Nicholas Detweiler, Plaintiff suffered the loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, and guidance of Nicholas Detweiler, and will continue to be for the remainder of her natural life. Accordingly,

1  JEREMIAH CAPURRO and DOES 1-10 are liable to Plaintiff for compensatory

2  damages under 42 U.S.C. § 1983. Plaintiff is also claiming funeral and burial

3  expenses.

4      49.    Plaintiff brings this claim individually and as successor-in-interest to

5  Nicholas Detweiler and seeks both survival damages, including for Nicholas

6  Detweiler's loss of life and pre-death pain and suffering, and wrongful death

7  damages, for the violation of Nicholas Detweiler's rights.

8      50.    Plaintiff also seeks costs and attorney's fees under this claim.

9                    **SECOND CLAIM FOR RELIEF**

10   **Fourth Amendment – Unlawful Detention and Arrest (42 U.S.C. § 1983)**

11    (Plaintiff against Defendants JEREMIAH CAPURRO and DOES 1-10)

12      51.    Plaintiff repeats and realleges each and every allegation in the foregoing

13  paragraphs of this Complaint with the same force and effect as if fully set forth

14  herein.

15      52.    When JEREMIAH CAPURRO grabbed onto Nicholas Detweiler and

16  trained his taser on Nicholas Detweiler, Nicholas Detweiler was not free to leave and

17  was seized. At that time, JEREMIAH CAPURRO did not have reasonable suspicion

18  or probable cause to believe that Nicholas Detweiler had committed a crime.

19  JEREMIAH CAPURRO then struck Nicholas Detweiler with his taser, baton, and

20  lethal rounds, continuing to seize Nicholas Detweiler and effectuating Nicholas

21  Detweiler's *de facto* arrest. After the shooting, on information and belief,

22  JEREMIAH CAPURRO handcuffed Nicholas Detweiler.

23      53.    Prior to seizing Nicholas Detweiler, JEREMIAH CAPURRO did not

24  observe Nicholas Detweiler commit any crime. In addition to the detention itself

25  being unreasonable, the scope and matter of the detention was also unreasonable in

26  that JEREMIAH CAPURRO used more force than reasonably appeared necessary to

27  effectuate Nicholas Detweiler's detention and arrest, including through the

28  unreasonable use of deadly force.

54.     When Defendant JEREMIAH CAPURRO engaged in the foregoing conduct, he violated Nicholas Detweiler's right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment ot the United States Constition and applied to state actors by the Fourteenth Amendment.

55.     The conduct of Defendant JEREMIAH CAPURRO was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Nicholas Detweiler and therefore warrants the imposition of exemplary and punitive damages as to Defendant JEREMIAH CAPURRO.

56.     At all relevant times, JEREMIAH CAPURRO was acting under color of state law.

57.     As a result of this misconduct, Defendants JEREMIAH CAPURRO and DOE OFFICERS are liable for Nicholas Detweiler's injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

58.     As a result of the foregoing, Nicholas Detweiler suffered great physical pain and emotional distress up to the time of his death after the shooting, and also suffered a loss of enjoyment of life, loss of life, and loss of earning capacity.

59.     As a direct and proximate result of the wrongful death of Nicholas Detweiler, Plaintiff suffered the loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, and guidance of Nicholas Detweiler, and will continue to be for the remainder of her natural life. Accordingly, JEREMIAH CAPURRO and DOES 1-10 are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

60.     Plaintiff brings this claim individually and as successor-in-interest to Nicholas Detweiler and seeks both survival damages, including for Nicholas Detweiler's loss of life and pre-death pain and suffering, and wrongful death damages, for the violation of Nicholas Detweiler's rights. Plaintiff is also claiming

1  funeral and burial expenses.

2       61.    Plaintiff also seeks costs and attorney's fees under this claim.

3  **THIRD CLAIM FOR RELIEF**

4  **Fourth Amendment - Denial of Medical Care (42 U.S.C. § 1983)**

5  (Plaintiff against Defendants JEREMIAH CAPURRO and DOES 1-10)

6       62.    Plaintiff repeats and realleges each and every allegation in the

7  foregoing paragraphs of this Complaint with the same force and effect as if fully set

8  forth herein.

9       63.    The denial of medical care by Defendants JEREMIAH CAPURRO and

10  DOE OFFICERS deprived Nicholas Detweiler of his right to be secure in his persons

11  against unreasonable searches and seizures as guaranteed to him under the Fourth

12  Amendment to the United States Constitution and applied to state actors by the

13  Fourteenth Amendment.

14       64.    On information and belief, JEREMIAH CAPURRO and DOE

15  OFFICERS knew, or reasonably should have known, that failure to provide timely

16  medical treatment to Nicholas Detweiler could result in further significant injury, the

17  unnecessary and wanton infliction of pain, and/or death, but disregarded that serious

18  medical need, exacerbating Nicholas Detweiler's injuries and pain and causing his

19  death.

20       65.    On information and belief, after shooting Nicholas Detweiler,

21  JEREMIAH CAPURRO and DOE OFFICERS did not timely summon or provide

22  timely medical attention for Nicholas Detweiler, who was bleeding profusely and had

23  obvious injuries, and JEREMIAH CAPURRO and DOE OFFICERS did not allow,

24  and rather prevented, responding medical personnel on-scene to timely render

25  medical aid and assistance to Nicholas Detweiler.

26       66.    The conduct of Defendants JEREMIAH CAPURRO and DOE

27  OFFICERS was willful, wanton, malicious, and done with reckless disregard for the

28  rights and safety of Nicholas Detweiler and therefore warrants the imposition of

exemplary and punitive damages as to these Defendants.

67.     As a result of the foregoing, Nicholas Detweiler suffered great physical pain and emotional distress up to the time of his death after the shooting, and also suffered a loss of enjoyment of life, loss of life, and loss of earning capacity.

68.     As a direct and proximate result of the wrongful death of Nicholas Detweiler, Plaintiff suffered the loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, and guidance of Nicholas Detweiler, and will continue to be so deprived for the remainder of her natural life. Accordingly, JEREMIAH CAPURRO and DOES 1-10 are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

69.     Plaintiff brings this claim individually and as successor-in-interest to the Nicholas Detweiler and seeks both survival damages, including for Nicholas Detweiler's loss of life and pre-death pain and suffering, and wrongful death damages for the violation of Nicholas Detweiler's rights. Plaintiff is also claiming funeral and burial expenses.

70.     Plaintiff also seeks costs and attorney's fees under this claim.

## FOURTH CLAIM FOR RELIEF

### First and Fourteenth Amendments – Interference with Familial Relationship
### (42 U.S.C. § 1983)

(Plaintiff against Defendants JEREMIAH CAPURRO and DOES 1-10)

71.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

72.     Plaintiff JULIA DETWEILER had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiff's familial relationship with her son, Nicholas Detweiler. Plaintiff also had

a cognizable interest under the First Amendment to the United States Constitution to be free from state actions that unreasonably interfere with her familial relationship and association with her son, Nicholas Detweiler.

73.     As a result of the excessive force by Defendants JEREMIAH CAPURRO and DOE OFFICERS while acting under color of state law, Nicholas Detweiler died. Plaintiff was thereby deprived of her First and Fourteenth Amendment rights of familial relationship with Nicholas Detweiler.

74.     The aforementioned actions of JEREMIAH CAPURRO and DOE OFFICERS, along with any undiscovered conduct, shock the conscience, in that he acted with deliberate indifference to the constitutional rights of the Nicholas Detweiler and Plaintiff and with purpose to harm unrelated to any legitimate law enforcement objective.

75.     As a direct and proximate cause of the actions of DOE OFFICERS, Plaintiff has suffered emotionally and has been deprived of the life-long love, companishionship, comfort, support, society, care, and sustenance of Nicholas Detweiler, and will continue to be so deprived for the remainder of her natural life.

76.     As a result of the conduct of JEREMIAH CAPURRO and DOE OFFICERS, they are liable for Nicholas Detweiler's and Plaintiff's injuries because they were integral participants in the denial of due process and free association rights.

77.      The conduct of JEREMIAH CAPURRO and DOE OFFICERS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Nicholas Detweiler and for the rights of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

78.     Plaintiff brings this claim individually and seeks wrongful death damages under this claim for the interference with Plaintiff's familial relationship with Nicholas Detweiler. Plaintiff is also claiming funeral and burial expenses.

79.     Plaintiff also seeks attorney's fees and costs under this claim.

**FIFTH CLAIM FOR RELIEF**

**Americans with Disabilities Act (42 U.S.C. § 12132)**

(Plaintiff against all Defendants)

80.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

81.     Nicholas Detweiler was a "qualified individual" with a mental impairment that substantially limited his ability to care for himself and control his mental health condition as defined under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2).

82.     The CITY and AMTRAK are covered entities for purposes of enforcement of the ADA, 42 U.S.C. § 12131(1), as explained by regulations under these laws.

83.     Under the ADA, the CITY and AMTRAK are mandated to develop effective procedures for interactions with, and the provision of services to, qualified individuals and to ensure the protection of their personal and civil rights.

84.     The CITY and AMTRAK are mandated under the ADA not to discriminate against any qualified individual on the basis of disability in any services or facilities. 42 U.S.C. § 12182(a).

85.     The CITY and AMTRAK violated the ADA by failing to properly train their employees, including CITY police officers and AMTRAK train conductors, to respond and interact peacefully with individuals who have mental health impairments and/or are experiencing mental health crises, such as Nicholas Detweiler.

86.     JEREMIAH CAPURRO, DOES 1-10, and BRUCE GARRETT violated the ADA by failing to follow procedures for dealing with individuals with mental impairments and/or who are experiencing mental health crises. With respect to BRUCE GARREETT, such individuals include train passengers with whom BRUCE GARRETT was expected to regularly interact in the course of his employment with

AMTRAK. With respect to JEREMIAH CAPURRO and DOES 1-10, these procedures include procedures for de-escalation and non-lethal force in interactions with members of the public with mental impairments and/or who are suffering from mental health crises, such as Nicholas Detweiler.

87.   As a result of the acts and omissions of Defendants, Nicholas Detweiler suffered damages, including loss of life and pain and suffering.

88.   Plaintiff brings this claim individually and as successor-in interest to Nicholas Detweiler and seeks both survival damages and wrongful death damages. Plaintiff is also claiming funeral and burial expenses.

89.   Plaintiff also seeks attorney's fees and costs under this claim.

## SIXTH CLAIM FOR RELIEF

### Battery (Cal. Govt. Code § 820 and California Common Law) (Wrongful Death and Survival)

(Plaintiff against all Defendants)

90.   Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

91.   Defendant JEREMIAH CAPURRO, while working as a police officer for the CITY and acting within the course and scope of his duties, intentionally used force, including deadly force, against Nicholas Detweiler. JEREMIAH CAPURRO had no legal justification for using force against Nicholas Detweiler, and said uses of force while carrying out his police officer duties were unreasonable, especially since Nicholas Detweiler did not pose an imminent threat of death or serious bodily injury to JEREMIAH CAPURRO or anyone else. The use of force, including deadly force, was also unreasonable because there were less intrusive options readily available. As a result of the actions of JEREMIAH CAPURRO, Nicholas Detweiler suffered severe mental and physical pain and suffering, loss of enjoyment of life, and ultimately died from his injuries and lost learning capacity.

92.     CITY is vicariously liable for the wrongful acts of JEREMIAH CAPURRO pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

93.     Defendant BRUCE GARRETT, while working as an employee for Defendant AMTRAK and acting within the course and scope of his duties, physically restrained Nicholas Detweiler from behind, against Nicholas Detweiler's will, including when Nicholas Detweiler was shot by JEREMIAH CAPURRO. BRUCE GARRETT had no legal justification for restraining Nicholas Detweiler. As a result of the actions of BRUCE GARRETT, Nicholas Detweiler suffered severe mental and physical pain and suffering, loss of enjoyment of life, and ultimately died from his injuries and lost earning capacity.

94.     AMTRAK is vicariously liable for the wrongful acts of BRUCE GARRETT pursuant to section 2338 of the California Civil Code, which provides that a principal is responsible for the negligent and wrongful acts and omissions committed by its agents in the transaction of the business or to fulfil the obligations of the principal.

95.     The conduct of JEREMIAH CAPURRO and BRUCE GARRETT was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Nicholas Detweiler, entitling Plaintiff, individually and as successor-in-interest to Nicholas Detweiler, to an award of exemplary and punitive damages.

96.     As a direct and proximate result of the wrongful death of Nicholas Detweiler, Plaintiff suffered the loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, and guidance of Nicholas Detweiler, and will continue to be so deprived for the remainder of her natural life. Accordingly, Defendants are liable to Plaintiff for compensatory damages.

97.     Plaintiff JULIA DETWEILER brings this claim individually and as

successor-in-interest to Nicholas Detweiler and seeks both survival damages, including for Nicholas Detweiler's pre-death pain and suffering, and wrongful death damages under this claim. Plaintiff is also claiming funeral and burial expenses.

**SEVENTH CLAIM FOR RELIEF**

**Negligence (Cal. Govt. Code § 820 and California Common Law) (Wrongful Death and Survival)**

(Plaintiff against all Defendants)

98.   Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

99.   The actions and inactions of the Defendants were negligent, including but not limited to:

a.   CITY's failure to properly and adequately train CITY police officers, including JEREMIAH CAPURRO, including with regard to the use of force, including deadly force, and with regard to dealing with members of the public who may be mentally ill;

b.   AMTRAK's failure to properly and adequately train AMTRAK employees, including BRUCE GARRETT, including with regard to situations involving police officers on AMTRAK trains, with regard to addressing disturbances on trains and involving passengers, and with regard to the use of physical restraint and other force against passengers;

c.   The failure to properly and adequately assess the need to detain, arrest, and use force, including deadly force, against Nicholas Detweiler;

d.   The negligent tactics and handling of the situation with Nicholas Detweiler, including pre-shooting negligence;

e.   The negligent detention, arrest, and use of force, including deadly

force, against Nicholas Detweiler;

f.    The failure to timely provide, summon, and/or allow the provision of medical care to Nicholas Detweiler;

g.    The failure to give a verbal warning or appropriate commands prior to using force, including deadly force; and

h.    The failure to properly train and supervise employees, including JEREMIAH CAPURRO, DOE OFFICERS, and BRUCE GARRETT.

100.    As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Nicholas Detweiler suffered extreme mental and physical pain and suffering and ultimately died and lost earning capacity. Also, as a direct and proximate result of Defendants' conduct as alleged above, Plaintiff has suffered emotionally and has been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Nicholas Detweiler, and will continue to be so deprived for the remainder of her natural life.

101.    CITY is vicariously liable for the wrongful acts of JEREMIAH CAPURRO pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

102.    AMTRAK is vicariously liable for the wrongful acts of BRUCE GARRETT pursuant to section 2338 of the California Civil Code, which provides that a principal is responsible for the negligent and wrongful acts and omissions committed by its agents in the transaction of the business or to fulfil the obligations of the principal.

103.    Plaintiff JULIA DETWEILER brings this claim individually and as successor-in-interest to Nicholas Detweiler and seeks both survival damages, including for Nicholas Detweiler's pre-death pain and suffering, and wrongful death

damages under this claim. Plaintiff is also claiming funeral and burial expenses.

## EIGHTH CLAIM FOR RELIEF

### Violation of Bane Act (Cal. Civil Code § 52.1)

(Plaintiff against Defendants JEREMIAH CAPURRO, DOES 1-10, and CITY OF MOUNT SHASTA)

104.   Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

105.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from interfering with another person's exercise or enjoyment of his or her constitutional rights by threats, intimidation, or coercion (including by the use of unconstitutionally excessive force).

106.   Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of this state has been interfered with, within the meaning of Section 52.1, may institute and prosecute in his or her name and on his or her own behalf a civil action for damages and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the rights at issue.

107.   The Bane Act, the California Constitution and California common law prohibit unlawful detention and arrest and the use of excessive force by law enforcement. The Bane Act authorizes a private right of action and permits survival actions for such claims.

108.   Defendants JEREMIAH CAPURRO and DOES 1-10 violated Nicholas Detweiler's constitutional, statutory, and common law rights by using excessive force, where these Defendants' acts of unreasonable force were done intentionally and with a reckless disregard for Nicholas Detweiler's rights and for his life.

109.   Defendant JEREMIAH CAPURRO's use of deadly force was excessive and unreasonable under the circumstances. Further, the involved officers did not give a verbal warning or adequate commands prior to fatally shooting Nicholas Detweiler,

despite being feasible to do so. Defendants' actions thus deprived Nicholas Detweiler of his right to be free from unreasonable searches and seizures under the United States and California constitutions and other California law. The conduct of Defendant JEREMIAH CAPURRO was a substantial factor in causing the harm, losses, injuries, and damages to Nicholas Detweiler and Plaintiff.

110.   Defendant JEREMIAH CAPURRO intentionally violated Nicholas Detweiler's constitutional rights by using excessive deadly force against him, including but not limited to fatally shooting him without warning. Further, these intentional acts by JEREMIAH CAPURRO show that he acted with a reckless disregard for Nicholas Detweiler's constitutional rights, thereby demonstrating his intent to violate those rights.

111.   At the time of the shooting, Nicholas Detweiler did not pose an immediate threat of death or serious bodily injury and Nicholas Detweiler had not verbally threatened anyone in the leadup to the shooting. There is direct and circumstantial evidence that JEREMIAH CAPURRO intentionally violated Nicholas Detweiler's rights by unlawfully detaining him, by unlawfully arresting him, and by fatally shooting him.

112.   Defendants JEREMIAH CAPURRO and DOES 1-10, while working as police officers for the CITY, and acting within the course and scope of his duties, interfered with or attempted to interfere with the rights of Nicholas Detweiler to be free from unreasonable searches and seizures, to equal protection of the laws, and to be free from state actions that shock the conscience, by threatening or committing acts involving violence, threats, coercion, or intimidation.

113.   Nicholas Detweiler was caused to suffer extreme mental and physical pain and suffering and ultimately died and lost earning capacity. Plaintiff has also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Nicholas Detweiler, and will continue to be so deprived for the remainder of her natural life.

COMPLAINT FOR DAMAGES

114.   The conduct of JEREMIAH CAPURRO and DOES 1-10 was a substantial factor in causing the harm, losses, injuries and damages of Nicholas Detweiler and Plaintiff.

115.   Defendant CITY is vicariously liable for the wrongful acts of JEREMIAH CAPURRO and DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

116.   The conduct of JEREMIAH CAPURRO and DOES 1-10 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Nicholas Detweiler, entitling Plaintiff to an award of exemplary and punitive damages as against these Defendants.

117.   Plaintiff brings this claim individually and as successor-in-interest to Nicholas Detweiler and seeks survival damages, including for Nicholas Detweiler's pre-death pain and suffering, and wrongful death damages under this claim. Plaintiff also claims funeral and burial expenses.

118.   Plaintiff also seeks costs and attorney fees under this claim.

/ / /

/ / /

/ / /

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff JULIA DETWEILER requests entry of judgment in their favor and against Defendants CITY OF MOUNT SHASTA, JEREMIAH CAPURRO, NATIONAL RAILROAD PASSENGER CORPORATION, BRUCE GARRETT, and DOES 1-10, inclusive, as follows:

A.     For compensatory damages, including both survival and wrongful death damages under federal and state law, in the amount to be proven at trial;

B.     For other general damages in an amount according to proof at trial;

C.     For other non-economic damages in an amount according to proof at trial;

D.     For funeral and burial expenses;

E.     For other special damages in an amount according to proof at trial;

F.     For punitive damages against the individual defendants in an amount to be proven at trial;

G.     Attorney's fees and costs pursuant to 42 U.S.C. § 1988;

H.     Attorney's fees and costs pursuant to Cal. Civ. Code § 52.1(h)

I.     For interest;

J.     For reasonable costs of this suit; and

K.     For such further other relief as the Court may deem just, proper, and appropriate.

DATED: November 7, 2024                    **LAW OFFICES OF DALE K. GALIPO**

By: __*/s/ Dale K. Galipo*_____
DALE K. GALIPO
BENJAMIN S. LEVINE
Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

The Plaintiff named herein hereby demands a trial by jury.


DATED: November 7, 2024          **LAW OFFICES OF DALE K. GALIPO**


By:  _/s/ Dale K. Galipo_
     DALE K. GALIPO
     BENJAMIN S. LEVINE
     Attorneys for Plaintiff

COMPLAINT FOR DAMAGES